# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

TERRY L. LOWATER,               )
                                )
                                )
                Plaintiff,       )
                                )
v.                              )          No.  05-CV-518-SAJ
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social Security )
Administration,                 )
                                )
                Defendant.       )

## OPINION AND ORDER[1/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2/]  Plaintiff asserts that the Commissioner erred because (1) the ALJ's finding as to Plaintiff's RFC omitted some of Plaintiff's limitations; and, (2) the ALJ failed to recognize all of Plaintiff's impairments as severe.  For the reasons discussed below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born March 23, 1966.  [R. at 46].  Plaintiff alleges an onset date of August 25, 2000.  [R. at 58].  In his disability report, Plaintiff wrote that he was unable to

---

[1/]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2/]   Administrative Law Judge Richard A. Say (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated March 19, 2005. [R. at 14 - 21].  Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on July 7, 2005.  [R. at 6].

work due to his lower back and spine, his right hand, and tendonitis in his right arm.  [R. at 62].

Plaintiff completed a pain questionnaire on May 28, 2003.  [R. at 79].  Plaintiff wrote that during an average day he fed his dogs, ate breakfast, and sat in a recliner to watch television.  [R. at 79].  Plaintiff noted that he experiences pain in his lower back which sometimes traveled up and down his legs.  Plaintiff noted that his activities had been limited since August 2000.  Plaintiff wrote that his pain limited his ability to bend or squat, and that sometimes he was unable to stand after bending or squatting.  When Plaintiff has pain he soaks in a hot bath and lays on a heating pad.  [R. at 80].  Plaintiff takes Tylenol for pain and noted that he was unable to afford medicine and could not go to doctor because he could not afford it.  [R. at 80].

Plaintiff believes that he sleeps about three to four hours each night.  [R. at 81].  Plaintiff indicated that his back hurts at night and he has difficulty getting comfortable.  [R. at 81].  Plaintiff noted that he does not have as many visitors as he previously had because he is not able to do much.  [R. at 81].  Plaintiff noted that he requires assistance to get into and out of the bathtub and to wash his back and his feet.  [R. at 82].  Plaintiff finds it difficult to remain on his feet while cooking.  [R. at 82].  Plaintiff does not read because it causes his eyes to hurt and he experiences headaches.  [R. at 84].  Plaintiff watches movies and listens to country music for eight to ten hours each day.  [R. at 84].

In his reconsideration disability report, Plaintiff wrote that he had a knot growing on his spine which caused his back to hurt and he experienced pain.  [R. at 87].  Plaintiff noted that he could not afford to go to the doctor.  [R. at 87].  Plaintiff also indicated that he had

difficulty moving or doing anything without having lots of pain.  [R. at 87].  Plaintiff listed his medications as Tylenol and Ibuprofen.  [R. at 92].

On August 19, 1998, Plaintiff was examined by Frank S. Letcher, M.D.  [R. at 97-98]. Plaintiff was injured while working in maintenance on June 16, 1998.  Plaintiff was holding an I-beam while on a ladder and fell off of the ladder while still clutching the beam, hitting his feet and back against a hydraulic unit.  Plaintiff continued to work with pain until June 23, 1998, when he stopped working due to severe pain.  Plaintiff has complained of low back pain radiating into his left lower extremity, and Plaintiff has been treated with muscle relaxers and anaglesics.  An August 11, 1998, MRI indicated a central herniation of the disc at L4, with an intraspinal lesion posterior to the body of L1.  The radiologist thought the lesion was a possible nerve sheath tumor.  Plaintiff was taking no medications, and past history indicated a cyst removal in 1983 and an operation on his fingers in 1997.  [R. at 97]. Plaintiff appeared to be in no obvious distress and rose slowly and walked with a careful gait.  Straight leg raising test was negative on the right and positive on the left at 60 degrees.  Plaintiff had no detectable focal motor weakness or sensory loss.  The doctor recommended a lumbar myelogram and spinal CT.  [R. at 98].

Plaintiff was admitted August 21, 1998, and discharged August 23, 1998, for a bilateral partial hemilamectomy at L4 and L5 with bilateral facetectomy at L4-5 and bilateral microdisckectomy at L4-5 with posterior interbody ray cage implant fusion at L4-5. Plaintiff's condition on discharge was reported as "improved," and Plaintiff was prescribed Lortab.  [R. at 100].

Plaintiff returned to Dr. Letcher on March 1, 1999.  Dr. Letcher noted that Plaintiff stated in mid January he had a recurrence of low back pain and stopped working.  Plaintiff

had no treatment or evaluations for his back pain.  Plaintiff reported that the pain was present most of the day but that in the prior two weeks the pain had been significantly better.  On examination Plaintiff rose from a seated position with ease and walked with a normal gait and station.  Plaintiff had no detectable neurologic deficit.  X-rays indicated excellent stability at the fusion site.  [R. at 101].  The doctor was unable to find an explanation for Plaintiff's complaints.  "In my opinion he may return to work at full time, unrestricted activity now."  [R. at 101].

Plaintiff was examined by Jim C. Martin, M.D. on April 6, 2001.  [R. at 102].  Plaintiff reported that while employed he sustained injuries while using a buffer to buff sinks and tubs which caused increasing pain in his low back, left hips, and down his leg.  Plaintiff maintained that beginning in September 2000, he was unable to continue working.  [R. at 102].  Plaintiff complained of severe pain that increased with any attempts to lift, bend, or twist.  The doctor noted that Plaintiff appeared to be in acute distress, noting that Plaintiff had difficulty getting up and down from the sitting position, as well as on and off the examining table.  [R. at 103].  Plaintiff's back had spasms and tenderness over the left sacroiliac joint and the left mid buttocks.  Plaintiff had a positive straight leg raising test on the left.  The doctor concluded that, in his opinion, Plaintiff had sustained injury to his low back with sensory nerve injury and radiculopathy affecting his left hip and lower extremity. The doctor recommended consultation with a neurosurgeon, and an MRI.  "[I]t is my opinion that as a result of this patient's cumulative, repetitive trauma, he is 100% temporarily totally disabled, and will be for an indefinite period of time, pending further medical treatment."  [R. at 103].

Plaintiff was examined by William R. Grubb, M.D., on September 3, 2003, for the State of Oklahoma Disability Determination.  [R. at 105].  Plaintiff complained of radiating low back pain for the past several years.  Plaintiff's records and prior MI and myelogram showed a L4-5 disc bulge which might have improved after initial surgery, but Plaintiff reported additional pain.  Plaintiff took Tylenol and Advil for back pain.  Plaintiff reported numbness in his second and third fingers of his right hand.  Plaintiff noted that more than two years ago he had a crush injury affecting the second and third fingers of that hand.  [R. at 105].  Plaintiff did not report range-of-motion problems.  [R. at 105].  Plaintiff was described as a well-developed, well-nourished male in no evident distress who got onto and off of the exam table without evident difficulty.  [R. at 106].  Plaintiff had some possible mild tenderness on a bicep.  Grip strength was 5/5 bilaterally, and dexterity of gross and fine manipulation was normal.  Gait was normal in terms of speed, stability, and safety, and Plaintiff was able to stand on his toes and walk heel-to-toe.  [R. at 106].  The doctor noted degenerative disc disease, probably right side bicep tendonitis, paresthesia in second and third fingers, and neck pain.  [R. at 106].  The doctor completed a range-of-motion evaluation chart, and noted that Plaintiff could effectively manipulate small objects and grasp tools.  [R. at 111].

A Physical Residual Functional Capacity Assessment form was completed October 24, 2003, by a medical reviewer.  [R. at 112].  Plaintiff was noted as able to occasionally lift 20 pounds, frequently lift ten pounds, stand or walk for six hours in an eight hour day, sit for six hours in an eight hour day, and push or pull an unlimited amount.  [R. at 113].  Plaintiff was noted as being able to only occasionally stoop.  [R. at 114].  The assessment was affirmed as written on October 24, 2003.  [R. at 119].

Plaintiff went to the Veteran's Administration's Tulsa Outpatient Clinic on July 10, 1994.  [R. at 120].  Plaintiff reported back and joint stiffness.  [R. at 122].  Plaintiff's left leg had decreased strength as compared to his right leg.  [R. at 123].  Plaintiff was referred to a dietician due to his cholesterol level.  [R. at 124].  Plaintiff was given general instruction on a good diet and exercise with physical activity.  [R. at 125].  Plaintiff reported back and had right arm pain.  [R. at 127].  Plaintiff requested pain medications.  [R. at 128].  Plaintiff ambulated briskly down a hallway with a steady and even gait.  [R. at 131].  Plaintiff reported pain increased after "lifting on a bathtub" approximately one year prior.  [R. at 131].  Plaintiff had physical therapy for his back on August 23, 2004.  [R. at 135].

Plaintiff was examined by the State of Oklahoma Disability Determination Division by Subramaniam Krishnamurthi, M.D.  [R. at 154].  Plaintiff noted his major problem as back pain.  Plaintiff had surgery in 1998 and was working when he again injured his back in 2001.  [R. at 154].  Plaintiff reported sitting caused pain, and believed he could walk for two blocks, stand for two hours, and sit a few hours before getting up to move around.  [R. at 154].  Plaintiff reported tendinitis of his right arm since 2000.  [R. at 154].  Plaintiff reported taking a pain pill, muscle relaxant, arthritis medication and sleeping pill, but did not know the names of the medications.  [R. at 154].  Plaintiff reported using a cane at home which was not prescribed by a physician and which he did not bring with him to his examination.  [R. at 155].  Plaintiff was able to walk without the cane.  Speed was slow but gait was steady and stable.  Tow walking was difficult.  Plaintiff was able to sit on the examination table with some difficulty due to pain.  Motor strength was 5/5 with lower extremities having 5/5 strength in the quadriceps, hamstrings, and dorsiflexion and plantar flexion of the feet.  [R. at 155].  Plaintiff's range-of-motions were reduced due to pain.  [R.

at 155].  Plaintiff's finger, thumb, wrist, and elbow joints were all normal.  [R. at 155].  A

Residual Functional Capacity Assessment was completed November 30, 2004.  Plaintiff

could occasionally lift ten pounds, frequently lift less than ten pounds, stand or walk for two

hours in an eight hour day, sit for less than six hours in an eight hour day, and push or pull

a limited amount in lower extremities.  [R. at 162-64].

Plaintiff testified before ALJ Richard Say on October 4, 2004.  [R. at 184].  Plaintiff

was 38 years old at the time that he testified before the ALJ.  Plaintiff is a high school

graduate.  [R. at 189].  Plaintiff stated that he is able to read, write, and perform general

math.  Plaintiff served for three years in the military.  [R. at 190].  Plaintiff was in prison in

2000 for a third DUI.  [R. at 190].

Plaintiff stated that he has difficulty getting up in the morning, and that he

experiences pain throughout the day.  [R. at 191].  Plaintiff noted that he had back surgery

in August 1998 and was currently taking pills for arthritis and a pill for acid reflux, and a

muscle relaxer.  [R. at 191, 195].

According to Plaintiff, his primary limitation is caused by back pain.  Plaintiff noted

that he has a growth on his spine in the middle of his back for which will have an MRI.

Plaintiff stated that the growth caused pain.  [R. at 193].  Plaintiff also testified that his right

hand causes him problems, and that he is unable to make a fist.  [R. at 194].  Plaintiff

stated that he has little feeling in two of his fingers from a smash injury in 1997.  [R. at 194].


Plaintiff believes that he could lift about 15 pounds.  [R. at 195].  Plaintiff stated that

the muscle relaxers that he takes make him tired.  [R. at 195].  Plaintiff is able to dress

himself in the morning, but noted that he requires assistance sometimes with tying shoes

and buttons due to his fingers.  [R. at 196].  Plaintiff testified that he needs help getting in and out of the shower when his back is hurting.  [R. at 196].  Plaintiff is able to load the dishwasher.  [R. at 197].  Plaintiff assists with dusting and some cleaning.  [R. at 197].  Plaintiff does not drive.  [R. at 107].  Plaintiff attends church approximately twice each month.  [R. at 198].  The meetings last approximately one hour, but Plaintiff is unable to sit through the meetings, but must sometimes stand and walk a bit.  [R. at 198].

Plaintiff stated that he naps a lot during the day because he is unable to sleep at night.  [R. at 199].  Plaintiff believes that he sleeps for three to three and one-half hours each night, in fifteen minute intervals.  [R. at 199].  Plaintiff believes he could sit for about thirty minutes, and stand for about thirty minutes.  [R. at 201].  Plaintiff can walk approximately 100 yards before being required to sit.  Plaintiff cannot stoop or squat without hurting.  [R. at 201].  Plaintiff stated that he cannot use his fingers to pick up quarters and dimes and determine the difference, by touch, between them.  [R. at 204].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. § 404.1520.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work in the
> national economy. . . .

-- 8 --

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 1521.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the RFC to perform light work activity that would permit him to change positions every 30 minutes.  [R. at 18].  The ALJ concluded that Plaintiff would be unable to return to his past relevant work which was medium or heavy level work.  The ALJ found, at Step Five, that other jobs existed in the national economy which Plaintiff could perform.  [R. at 19].  The ALJ concluded that Plaintiff was not disabled.

### IV.  REVIEW

After reviewing the record and opinion of the ALJ the Court concludes that this action must be reversed because the decision of the ALJ is not supported by substantial evidence.

---

[4/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

The ALJ concluded that Plaintiff's RFC was limited to "light level work activity that would allow him to change positions every 30 minutes."  [R. at 18, *footnote omitted*]. The ALJ relied upon a vocational expert to support his conclusion that Plaintiff could work at Step Five.  However, the hypothetical question presented to the vocational expert did not include the restrictions which the ALJ concluded Plaintiff has.  The decision of the ALJ is therefore not supported by substantial evidence.

At Step Five, the Commissioner must provide evidence that establishes that the jobs exist in the national economy which the claimant can perform given the claimant's RFC.

> In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.  We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

20 C.F.R. § 404.1562(c)(2).  In finding that other work does exist in the national economy, various sources may be considered, including the use of a vocational expert or other specialist.  20 C.F.R. § 404.1566(e).

When an ALJ relies upon a vocational expert to support the ALJ's conclusion that a claimant can work, the ALJ must adequately relate the RFC of the claimant to the vocational expert.  The testimony of the vocational expert is substantial evidence for the ALJ's conclusions that the claimant may work only if the hypothetical question presented to the vocational expert includes all of the limitations which the ALJ has found that the claimant has.  *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) ("[T]he ALJ's failure

to include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.") (*emphasis in original, citations omitted)*; *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.").

The ALJ presented some hypothetical questions to the vocational expert, but none of them adequately include the limitations which the ALJ concluded that Plaintiff has – light work with changing positions every 30 minutes.

The first hypothetical question is an individual 38 years of age with the ability to read and write, and limited to light work.  [R. at 210].  This hypothetical question contains little more than the Grids.  The vocational expert listed numerous light and sedentary jobs which such a person could perform.  [R. at 211].

The second hypothetical was to assume that this person could not use his index or middle fingers for fingering activities.  [R. at 211-12].  The vocational expert testified that this restriction would eliminate the sedentary unskilled work, and would reduce the light level work by 98 percent.  [R. at 212].  The vocational expert then states that "there would be a significant amount of jobs, . . . , but there would not be a significant amount of occupations."  [R. at 212].  The vocational expert lists the job of parking lot attendant, at 1,500 jobs regionally and 16,000 nationally; the job of usher with regional numbers at 1,250 and national numbers at 45,000.  *See  e.g. Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (refusing to draw a bright line, but indicating the criteria for consideration in

determining whether a significant number of jobs is present); *See also Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1992) (summarizing the various positions of the circuits: Sixth Circuit found 1,350 positions significant; Ninth Circuit found 1,266 positions significant; Tenth Circuit found 850-1,000 potential jobs significant; Eighth Circuit found 500 jobs significant; Eleventh found 174 positions significant).

What the Court labels as the third hypothetical is the first time the ALJ mentions the change of position each half hour.

> Q: I'm assuming then if that individual also had additional limitations in that he could only stand and walk maybe up to two hours – well, sit, stand or walk up to two hours per workday and would require breaks every half an hour, so a change of position at least every half an hour, that would eliminate those jobs, too. Is that correct?
> A: That is correct.

[R. at 213]. The third hypothetical builds on the second hypothetical, adding limitations to the second hypothetical, with the answer by the vocational expert indicating that the entire job base is eliminated. Of course the third hypothetical question also limits the individual to standing, siting or walking for only two hours in an eight hour day which renders working an entire eight hours improbable if not impossible.

The fourth hypothetical question asks the vocational expert to assume that the claimant's testimony is true. The vocational expert answers that the person would be unable to perform any of his past relevant work or any other occupations. [R. at 213].

No hypothetical question to the vocational expert relates the RFC which the ALJ determined for Plaintiff. In fact, the hypothetical question which is closest to the RFC that ALJ determined for Plaintiff is the third hypothetical which, because it "adds" to the second hypothetical question, also includes limitations for Plaintiff's hand. The vocational expert

-- 13 --

found that no jobs existed in the national economy in response to that hypothetical question.

This issue is not raised by Plaintiff as an error on appeal.  However, in reviewing the record the Court concludes that such an obvious lack of support for the ALJ's findings requires reversal.

Plaintiff asserts that the ALJ failed to include stooping limitations in the RFC for Plaintiff although the agency doctors concluded that Plaintiff had some limitations for stooping.  The ALJ's decision does not adequately discuss Plaintiff's RFC or the manner in which the ALJ determined Plaintiff's RFC.  On remand, the ALJ should evaluate the Plaintiff's RFC considering the medical evidence and explain how the RFC was reached. If the ALJ consults a vocational expert, any hypothetical question should include, in detail, the limitations which the ALJ finds in the RFC.

Dated this 16th day of October 2006.

Sam A. Joyner
United States Magistrate Judge

-- 14 --